**Opinion issued March 26, 2019**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

## NO. 01-18-00284-CR

———————————

## VALENTINE V. CASTILLO, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 396th District Court**
**Tarrant County,[*] Texas**
**Trial Court Case No. 1468009D**

---

\* Pursuant to the Texas Supreme Court's docket equalization powers, this appeal was transferred from the Second Court of Appeals to this court on April 11, 2018. *See* TEX. GOV'T CODE § 73.001; Order Regarding Transfer of Cases From Courts of Appeals, Misc. Docket No. 18-9049 (Tex. Mar. 27, 2018). We are unaware of any conflict between precedent from the Second Court of Appeals and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

# O P I N I O N

Valentine V. Castillo, Jr. appeals from his judgment of conviction for the offense of aggravated sexual assault of a child, contending that the trial court's:

(1) application of mandatory-minimum and parole-ineligibility statutes violated his constitutional guarantees against conviction for ex post facto crimes;

(2) admission into evidence of a recording of the complainant's forensic interview and the testimony of the complainant's stepsister that he also sexually abused her was an abuse of discretion; and

(3) exclusion from evidence of letters written to him by the complainant's stepsister after she reported that he had sexually abused her was an abuse of discretion.

Finding no error, we affirm.

## BACKGROUND

A grand jury indicted Castillo for one count of continuous sexual abuse of a young child, two counts of aggravated sexual assault, and two counts of indecency with a child. *See* TEX. PENAL CODE §§ 21.02(b), 21.11(a), 22.021(a)(1)(B), (a)(2)(B). All counts concerned the same child complainant, the daughter of a woman whom Castillo dated and with whom he intermittently resided. The indictment also alleged that the complainant was younger than six years of age at the time of the offenses and that Castillo was a habitual offender.

Castillo pleaded not guilty and the charges were tried to a jury.

The complainant was thirteen years old at trial. She testified that Castillo touched her vagina with his hand on many occasions. One night, when she was one or two years old, she awoke in her mother's bedroom while her mother was at work, and a pornographic film was on the television. She was lying on the bed and her pants had been pulled down to her knees. Castillo was touching her vagina with his hand. He penetrated her with his finger and it hurt. Castillo warned the complainant to keep his actions a secret or else he would hurt her mom.

She testified that he did the same thing to her on multiple other occasions in her mother's bedroom, in the car, and once at Castillo's apartment. She recounted said that these additional instances likewise took place when she was one or two years old, except for the incident at his apartment, which happened when she was three years old. She did not recall him ever sexually abusing her in any way other than touching her.

The complainant did not tell anyone what had happened until she was eleven years old because she did not think anyone would believe her. At age eleven, she asked her mother why the complainant's father, Louis Maldonado, was in prison. Her mother told her that Maldonado had been convicted of sexually abusing the complainant's older stepsister, who is Castillo's daughter. The complainant then disclosed that Castillo had sexually abused her.

3

Defense counsel cross-examined the complainant about inconsistencies in her allegations over time, including during her interview with a forensic interviewer, Lindsey Dula, that took place after the complainant made the outcry to her mother. For example, defense counsel questioned the complainant about inconsistent representations as to her age when the alleged abuse occurred:

Q. [Y]ou told us here this morning that you believed you were one or two years old when most everything happened?

A. Yes, sir.

Q. Okay. And that you might have been around three years old when you were over at [Castillo's] apartment; is that correct?

A. Yes, sir.

Q. Okay. So do you remember telling people different ages?

A. No.

Q. Do you remember telling your mom you were three or four?

A. No.

Q. Do you remember telling Lindsey Dula—Ms. Dula, she's the lady that you talked to in the small room with the camera?

A. No.

Q. Do you remember telling her you were three or four?

A. No.

Q. Do you remember then telling Ms. Dula you might have been two?

A. I don't know.

Defense counsel also asked the complainant about inconsistencies in her allegations over time concerning where the sexual abuse occurred as well as other details,

including the first time Castillo abused her, whether he threatened to hurt her mother, and the particular sex acts involved.

Over the defense's objection that her testimony was not admissible under article 38.37 of the Code of Criminal Procedure, the complainant's stepsister also took the stand to testify about an incident when Castillo molested her, which occurred when she was eleven years old. Early one morning, while the stepsister was asleep on the couch at home, Castillo put his hands inside her pajama pants and underwear and touched her vagina. When she realized what was happening, she rolled over, turning away from him. Castillo then put his hand in the back of her pajamas and touched her buttocks. He stopped shortly afterward because her mother returned from work.

On cross-examination, defense counsel tried to question the complainant's stepsister about letters she had written to Castillo after the incident on the couch. The State objected on hearsay and relevancy grounds. The defense argued that the stepsister's testimony on this issue would show her state of mind—specifically, that she maintained a friendly relationship with Castillo after the incident, thereby calling into question whether it had happened. The trial court sustained the State's relevancy objection.

When the complainant's mother testified, she told the jury that she had dated Castillo on and off for a decade and he had lived with her and her children during

5

some of this time. She demanded that Castillo leave her home after she learned that he had inappropriately touched her other daughter, the complainant's stepsister.

The complainant's mother testified that the complainant revealed that Castillo had sexually abused her after they had a conversation about Maldonado's abuse of her stepsister. The complainant told her mother that Castillo had her with him in the mother's bedroom with pornography playing on the television when he touched her in "her private area," and that he made her touch his genitals.

The next morning, the mother contacted the police. The complainant subsequently underwent a sexual assault examination and was interviewed by Dula. The complainant's mother testified that she and Castillo had not yet started their dating relationship when the complainant was one or two years old.

The Fort Worth Police Department assigned Detective E. Buchanan to this case. He scheduled the complainant to sit for a forensic interview with Dula, which he observed by closed-circuit television. Next, he interviewed and took a statement from the complainant's mother. He referred the complainant for exam by a sexual assault nurse. Afterward, he prepared the documentation necessary to secure a warrant for Castillo's arrest. In cross-examining Buchanan, defense counsel asked whether the complainant's allegations were consistent over time, including during her forensic interview. Buchanan responded that there were no inconsistencies, but he did acknowledge that the complainant's mother had expressed some concerns

about the consistency of the complainant's allegations. He further acknowledged that the complainant made her outcry after learning that her stepsister had accused the complainant's father, Maldonado, of molestation.

Amy Ornelas was the registered nurse who conducted the complainant's sexual assault exam. Based on notes that she took during the exam, Ornelas testified that the complainant told her that Castillo touched her genitalia, inserted fingers inside of her, put his mouth on her genitalia, and showed her pornography when she was "three to four years old." Ornelas's exam did not reveal any physical injuries, which she said was consistent with the complainant's allegations that Castillo had touched her with his hands and mouth. Ornelas conceded that the sole basis she had for believing that the complainant had been sexually abused was what the complainant had told her.

Dula, who conducted the complainant's forensic interview, also testified. In conjunction with her testimony, the State proffered a video recording of the complainant's forensic interview, arguing that it was admissible as a prior consistent statement and that the defense had opened the door to this evidence by repeatedly challenging the consistency of the complainant's allegations, including the defense's repeated suggestion that the complainant had accused Castillo in retaliation for her stepsister's accusation against the complainant's father, Maldonado. The defense responded that the interview was inadmissible hearsay because it did not qualify as

a prior consistent statement. The court ruled that the interview was admissible, and the video was played for the jury.

Dula stated that the complainant understood the difference between the truth and a lie. She opined that the complainant's account of the sexual abuse by Castillo included sensory and peripheral details that made it credible and indicated that she had not been coached. In the interview, Dula testified, the complainant described chronic sexual abuse. On cross-examination, Dula agreed that the complainant did not allege that Castillo put his mouth on her vagina or that he made her touch his genitals. Dula further agreed that she was not opining as to whether the complainant's allegations were actually true.

The defense did not offer any of its own witnesses or other evidence.

Before the case went to the jury, the State waived the count of the indictment charging Castillo with indecency with a child that alleged he forced her to touch his genitals. The State also waived the remaining count of indecency with a child and the two counts of aggravated sexual assault and requested that they instead be submitted as lesser-included offenses of the count charging continuous sexual abuse of a child. The court granted this request.

The charge instructed the jury to consider only alleged conduct occurring before the presentment of the indictment and after September 1, 2007, when the complainant was more than two and half years old. The jury found Castillo not guilty

8

of continuous sexual abuse of a child and aggravated sexual assault by putting his mouth on the complainant's vagina. It found him guilty of aggravated sexual assault by digital penetration and indecency with a child by touching the complainant's vagina with his hand.

Because the count for indecency with a child by touching was a lesser-included offense of aggravated sexual assault by digital penetration, the trial court vacated the indecency finding and entered a judgment of conviction for aggravated sexual assault. Punishment was tried to the court, which assessed Castillo's punishment at 50 years' confinement.

## DISCUSSION

### I.    Ex Post Facto Claim

Having been convicted of committing aggravated sexual assault against a child who was younger than six years of age, Castillo was subject to a minimum of 25 years of imprisonment and ineligible for parole by statute. *See* TEX. PENAL CODE § 22.021(f)(1); TEX. GOV'T CODE § 508.145(a). Castillo contends that the application of these mandatory-minimum and parole-ineligibility statutes violates his constitutional guarantees against conviction for ex post facto crimes. *See* U.S. CONST. art. I, § 10, cl. 1; TEX. CONST. art. 1, § 16. He reasons that that the jury heard evidence of sexual assaults occurring both before and after September 1, 2007, the

9

effective date of these statutes, and that the trial court therefore may have applied these statutes to conduct that he engaged in before they became law.

We reject Castillo's contention because he has not stated a cognizable ex post facto claim. The federal and Texas constitutional guarantees against the application of ex post facto laws are directed at the legislature, not the courts. *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex. Crim. App. 2002); *see also Ex parte Heilman*, 456 S.W.3d 159, 163–65 (Tex. Crim. App. 2015) (reaffirming *Ortiz*'s holding). To state a cognizable ex post facto claim, Castillo must show that sections 22.021(f)(1) and 508.145(a) themselves operate retroactively—not that the trial court retroactively applied them to an offense he committed before their enactment. *Ortiz*, 93 S.W.3d at 91. Because Castillo does not argue that these statutes operate retroactively, his ex post facto claim fails. *Id.*; *see also Pomier v. State*, 326 S.W.3d 373, 387–88 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (erroneous application of statute by court to acts committed by defendant before statute's enactment wasn't ex post facto violation).

Moreover, even if a trial court's retroactive application of a statute to offenses committed before the statute's effective date could serve as basis for a valid ex post facto claim (or some other appellate complaint), the trial court's jury charge limited the time period the jury was to consider to avoid the retroactive application of sections 22.021(f)(1) and 508.145(a) to Castillo. The charge contained an instruction

10

that the State had to prove that any offense committed by Castillo was committed after September 1, 2007. It read:

> You are further charged as the law in this case that the State is not required to prove the exact date alleged in the indictment, but may prove the offense, if any, to have been committed at any time prior to the presentment of the indictment, and after September 1, 2007.

Absent evidence to the contrary, we presume juries follow the trial court's instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Castillo has not identified any contrary evidence and we discern none. Thus, the record demonstrates that the jury found Castillo guilty of aggravated sexual assault based on conduct that he engaged in after the enactment and effective dates of these mandatory-minimum and parole-ineligibility statutes. Sections 22.021(f)(1) and 508.145(a) therefore were not erroneously applied to Castillo.

## II. Evidentiary Complaints

Castillo contends that the trial court erred in admitting into evidence the recording of the complainant's forensic interview and the testimony of the complainant's stepsister that Castillo had sexually abused her as well. Castillo also contends that the trial court erred in excluding the letters that the complainant's stepsister wrote to him after the sexual abuse occurred.

### A. Standard of review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). Under

11

this standard, we may reverse the trial court only if its decision lies outside the zone of reasonable disagreement. *Id.* at 83; *see also Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016) (explaining that appellate court would misapply abuse-of-discretion standard if it were to reverse merely because it disagrees with trial court's evidentiary decision).

## B. Complainant's forensic interview

Castillo contends that the recording of the complainant's forensic interview was inadmissible hearsay. The State responds that Castillo's hearsay objection to the entire interview was too general to preserve error for appellate review. The State further argues that some or all of the interview was admissible under either the hearsay exclusion for prior consistent statements offered to rebut a charge of recent fabrication or the rule of optional completeness.

### 1. Applicable law

The proponent of evidence usually has the burden of establishing its admissibility. *White v. State*, 549 S.W.3d 146, 151–52 (Tex. Crim. App. 2018). Thus, if the opposing side makes a proper objection to the admissibility of evidence, the proponent must demonstrate that the evidence overcomes the stated objection. *Id.* at 152. Generally speaking, a hearsay objection is sufficiently specific to require the offering party to show that the evidence either is not hearsay or is admissible

12

under an exception to the hearsay rule. *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994).

Hearsay—a statement made outside of court that is offered for its truth—generally is inadmissible. TEX. R. EVID. 801–02. The prior statement of a witness that is consistent with her trial testimony, however, is not hearsay if it is offered to rebut an express or implied charge that the witness recently fabricated it or acted from a recent improper motive in so testifying. TEX. R. EVID. 801(e)(1)(B). To qualify for admission as a prior consistent statement, however, the witness must have made the statement before her ostensible motive to fabricate or other improper motive arose. *Hammons v. State*, 239 S.W.3d 798, 808–09 (Tex. Crim. App. 2007).

The rule of optional completeness is an exception to the hearsay rule. *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). Under the rule, if a party introduces into evidence part of a conversation or recorded statement, the party's opponent may introduce any other conversation or recorded statement that is necessary to explain or allow the jury to fully understand the part previously introduced. TEX. R. EVID. 107; *Pena*, 353 S.W.3d at 814. Thus, if a party questions a witness about specific statements made by another during a recorded interview, the opponent may introduce any remaining part of the interview that concerns the same subject and is necessary to permit the jury to place those specific statements in

their proper context. *Sauceda v. State*, 129 S.W.3d 116, 122–23 (Tex. Crim. App. 2004).

### 2.    Analysis

When the State proffered the video of the complainant's forensic interview, Castillo objected that it was hearsay. The State contends that this objection to the recorded interview was insufficient to preserve error and that Castillo instead was required to identify specific statements within the interview that were hearsay. We disagree that Castillo's objection was insufficient to preserve error for review. When an exhibit encompasses multiple statements, only some of which are inadmissible hearsay, an objecting party must identify the specific statements that are objectionable to preserve any error for appellate review. *See, e.g.*, *Whitaker v. State*, 286 S.W.3d 355, 368–69 (Tex. Crim. App. 2009) (global hearsay objection to audiotapes insufficient to preserve error as to specific statements made within recording); *Barnes v. State*, 876 S.W.2d 316, 329 (Tex. Crim. App. 1994) (global hearsay objection to entire "pen packet" insufficient to preserve error as to specific subset of documents within packet). Here, however, Castillo objected to the entirety of the interview as hearsay and maintains this position on appeal. The State's position at trial—that the entire interview was a prior consistent statement and thus outside the hearsay rule—was a tacit acknowledgement that the interview as a whole otherwise would not have been admissible. On this record, Castillo's hearsay

objection preserved this issue for our review. *See Cofield*, 891 S.W.2d at 954; *see also Tovar v. State*, 221 S.W.3d 185, 189 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (defense counsel's objection to admission of video as prior consistent statement preserved that issue for appellate review).

As it did in the trial court, the State maintains that the complainant's interview is admissible because it falls within the hearsay exclusion for prior consistent statements. *See* TEX. R. EVID. 801(e)(1)(B). Specifically, the State contends that it was entitled to show that the complainant had made prior statements consistent with her trial testimony to rebut the defense's charge that the complainant had fabricated her allegations of sexual abuse after learning that her father was imprisoned for sexually abusing Castillo's daughter. To qualify as a prior consistent statement under Rule 801(e)(1)(B), however, the complainant would had to have sat for her forensic interview before learning that her stepsister accused the complainant's father of molesting her, which, according to Castillo, gave her the motive to falsely accuse Castillo of sexually assaulting her. *See Hammons*, 239 S.W.3d at 809. The record is clear that the complainant's interview took place long after her mother told her why her father had been imprisoned. Thus, the hearsay exclusion as to prior consistent statements to rebut recent fabrication does not make the complainant's interview admissible. *See id.*; *see e.g.*, *Haughton v. State*, 805 S.W.2d 405, 407–08 (Tex. Crim.

15

App. 1990) (videotaped statements not admissible under Rule 801(e)(1)(B) because alleged motive to fabricate arose before the statements were recorded).

Nevertheless, the alternate ground that the State urged for admitting the video of the complainant's forensic interview—the rule of optional completeness—supports the trial court's ruling. Throughout trial, the defense called into question all material aspects of the complainant's allegations, including what happened, if anything, when it happened, where it happened, and whether Castillo said or did anything to ensure her silence. In his opening statement, defense counsel asserted that the complainant repeatedly changed her allegations, including during her forensic interview. Defense counsel called the complainant's consistency into question, including statements that she made during the interview, during cross-examination of the complainant. In response, the complainant generally was indecisive or uncertain as to what she previously had said during the interview. In addition, the defense called into question the complainant's consistency while cross-examining Detective Buchanan, who maintained that she had been consistent. Given the defense's challenge of the complainant's consistency during her interview, the State was entitled to introduce the video into evidence so that the jury could decide for itself the extent, if any, to which her story had changed. *See* TEX. R. EVID. 107; *Sauceda*, 129 S.W.3d at 122–23; *see also Tovar*, 221 S.W.3d at 190–91 (video of

16

complainant's interview was admissible under rule of optional completeness because defense had questioned her consistency).

The Court of Criminal of Appeals has held that the rule of optional completeness allows for the introduction of only those parts of a recorded statement necessary to make the previously admitted evidence fully and fairly understood. *Sauceda*, 129 S.W.3d at 123. Castillo, however, did not agree in the trial court that only part of the interview was admissible, nor does he do so on appeal. Given that his challenge to the complainant's consistency embraced virtually every aspect of her story, the uncertainty of her answers to specific questions posed in cross-examination, and the detective's testimony that she had been consistent, the trial court reasonably could have found that her entire recorded interview was necessary to place any inconsistencies in context for the jury. *See Tovar*, 221 S.W.3d at 190–91; *see also Bezerra v. State*, 485 S.W.3d 133, 142–43 (Tex. App.—Amarillo 2016, pet. ref'd) (affirming admission of recorded interviews of complainants under rule of optional completeness; entire interviews necessary to place testimony elicited during cross-examination of law-enforcement officer as to non-verbal communication of complainants in context); *Mick v. State*, 256 S.W.3d 828, 830–32 (Tex. App.—Texarkana 2008, no pet.) (recorded interview of complainant admissible under rule of optional completeness; entire interview was necessary given challenge of complainant's consistency made during cross-examination of

detective, who maintained that complainant had been consistent); *Credille v. State*, 925 S.W.2d 112, 116–17 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (recorded interview of complainant admissible under rule of optional completeness; entire interview necessary to place specific statements introduced by defense into their proper context). Accordingly, we hold that the trial court did not abuse its discretion in admitting the complainant's recorded interview.

## C. Stepsister's testimony about separate sex offense

Castillo contends that the trial court erred in allowing the complainant's older stepsister to testify that he also had sexually abused her. He maintains that article 38.37 of the Code of Criminal Procedure does not make her testimony admissible because it allows for the admission of extraneous sexual offenses, whereas he merely pleaded guilty to injuring the stepsister as part of a plea bargain in which the State dismissed a charge of indecency with a child.

### 1. Applicable law

When a defendant is tried for certain sex offenses against children, including continuous sexual abuse of a child, indecency with a child, and aggravated sexual assault, the State may introduce evidence that the defendant has committed a separate sex offense against another child. TEX. CODE CRIM. PROC. art. 38.37, § 2(b); *see Caston v. State*, 549 S.W.3d 601, 608 (Tex. App.—Houston [1st Dist.] 2017, no pet.). This evidence is admissible for any relevant purpose, including as proof of the

defendant's character and propensity to act in conformity with his character. TEX. CODE CRIM. PROC. art. 38.37, § 2(b); *Jacobs v. State*, 560 S.W.3d 205, 207 (Tex. Crim. App. 2018). The evidence may consist solely of the other child's testimony about the other sex offense. *See, e.g.*, *Alvarez v. State*, 491 S.W.3d 362, 366–67, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (upholding admission of testimony from defendant's nieces that he had sexually assaulted them in defendant's prosecution for sex offense against another child); *Gonzales v. State*, 477 S.W.3d 475, 480–81 (Tex. App.—Fort Worth 2015, pet. ref'd) (child's testimony that defendant had sexually abused her was sufficiently probative to support defendant's conviction for sex offenses against several other children).

### 2. Analysis

A grand jury previously indicted Castillo for indecency with a child and injury to a child. The allegations in that case concerned his biological daughter, who is the complainant's older stepsister. As part of a plea bargain, he pleaded guilty to the charge of injuring a child. Indecency with a child is a sex offense, whereas injury to a child is not. Castillo contends that the State's dismissal of that indecency charge is the equivalent of an acquittal on the sex offense and precluded the introduction of testimony by the stepsister that he had sexually abused her.

Whether considered as an acquittal or not, the trial court could properly conclude that the evidence of a separate sex offense involving the complainant's

19

stepsister was admissible under article 38.37. Article 38.37 allows the introduction of "evidence that the defendant has committed a separate offense" of a sexual nature against a child, so long as the trial court first determines after a hearing outside the jury's presence that the evidence likely to be admitted will be adequate to support a jury finding that the defendant committed the separate offense beyond a reasonable doubt. TEX. CODE CRIM. PROC. art. 38.37, §§ 2(b), 2-a. The defendant need not have been charged with, tried for, or convicted of this separate offense for this evidence to be admissible. *See id.* (allowing "evidence of other crimes, wrongs, or acts").

For example, in *Bradshaw v. State*, 466 S.W.3d 875 (Tex. App.—Texarkana 2015, pet. ref'd), the defendant was tried for the continuous sexual abuse of a child. *Id.* at 877. At trial, the State put another child on the stand who testified that the defendant had sexually abused her also. *Id.* On appeal, the defendant contended that the trial court erred in admitting her testimony because a grand jury previously had declined to indict him on charges of sexual abuse of the child witness. *Id.* at 877–78, 880. The court of appeals disagreed, holding that the trial court acted within its discretion in admitting the testimony and that the grand jury's decision not to indict the defendant for the alleged sexual abuse of the child witness did not preclude the introduction of evidence that he had done so. *Id.* at 880. The court of appeals reasoned that the grand jury's refusal to indict merely constituted a finding that the

specific evidence that it heard was not convincing enough to merit a formal charge, not an adjudication of the defendant's guilt or innocence. *Id.*

Similarly, Texas appellate courts have affirmed the admission of or reliance on evidence that the defendant committed a separate sexual offense against another child under article 37.38 despite the dismissal of charges concerning those separate offenses. *See, e.g.*, *McCombs v. State*, 562 S.W.3d 748, 754, 765–68 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (upholding admission of eldest daughter's testimony about father's sexual abuse of her at trial of father for sex offenses against two younger daughters after charges involving eldest daughter had been dismissed); *Baez v. State*, 486 S.W.3d 592, 597–99 (Tex. App.—San Antonio 2015, pet. ref'd) (upholding charge's instruction that jury could rely on child's testimony about foster father's sex abuse in prosecution of foster father for sex offenses against other children after state waived charges relating to testifying child on first day of trial).

Castillo's plea bargain is like the situations addressed in *Bradshaw*, *McCombs*, and *Baez*. Under the plea bargain, he pleaded guilty to injuring the complainant's stepsister in exchange for the State's dismissal of an indecency charge. The dismissal of the indecency charge was not an adjudication of Castillo's guilt or innocence as to that offense and therefore is not equivalent to an acquittal. *See Nassar v. State*, 797 S.W.2d 318, 319 (Tex. App.—Corpus Christi 1990, pet. ref'd) (trial court's approval of plea bargain did not require it to find that evidence

21

would not support a conviction for what it thought was greater offense and thus did not amount to an acquittal for that offense).

Castillo does not assert that the trial court failed to comply with article 38.37's hearing requirement, nor does he contend that the testimony of the complainant's stepsister otherwise failed to satisfy article 38.37's requirements. Thus, we hold that the trial court did not abuse its discretion in admitting the testimony of the complainant's stepsister.

## D. Stepsister's letters to Castillo

Castillo contends that the trial court erred in excluding the letters that the complainant's stepsister wrote to him after she accused him of sexually abusing her. He asserts that these letters were admissible under the state-of-mind exception to the hearsay rule, arguing that they showed that the stepsister had affection for him and thus cast doubt on her testimony that he had abused her. The State responds that Castillo did not present the letters to the trial court and that they were not relevant.

### 1. Applicable law

We construe the State's contention that Castillo did not present the letters to the trial court as an assertion that he failed to preserve error. To preserve error as to the exclusion of evidence, a party must try to introduce the evidence and obtain an adverse ruling from the trial court. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(2). The party also must make an offer of proof that informs the trial court of

the substance of the excluded evidence unless it is apparent from the context. TEX. R. EVID. 103(a)(2). The offer must include "the meat of the actual evidence" rather than a general, cursory summary, so that the appellate court can meaningfully assess whether the exclusion of the evidence was erroneous and harmful. *Mays v. State*, 285 S.W.3d 884, 890–91 (Tex. Crim. App. 2009). On appeal, the party's complaint must be the same complaint that it made in the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009); *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

### 2. Analysis

Defense counsel tried to cross-examine the complainant's stepsister about the letters that she sent to Castillo, but the trial court sustained the State's hearsay objection to the defense's question and excluded her testimony on the subject. Castillo did not try to introduce the letters. He did not make an offer of proof that included the actual letters, so they are not in the record. The record contains only brief questioning of the complainant's stepsister by defense counsel in a hearing outside the presence of the jury. Her answers establish that in her letters she:

- said hello and expressed sadness that Castillo might not be able to attend her graduation;

- told him that she wanted to send him photographs of herself and her siblings; and

- wished him well and invited him to write back to her.

She agreed that she was polite and kind in these letters.

In the trial court, Castillo argued that the complainant's stepsister's testimony about the letters was admissible. On appeal, Castillo complains about the exclusion of the letters themselves, not the stepsister's general, cursory testimony about them. The record shows that the trial court did not exclude the letters. Because Castillo did not offer them into evidence, obtain a timely ruling, and ensure that they were included in the appellate record, he cannot complain about the letters on appeal. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(2). His complaint on appeal differs from the one made in the trial court and therefore is not preserved for review. *See Lovill*, 319 S.W.3d at 691; *Martinez*, 91 S.W.3d at 336.

## CONCLUSION

We affirm the judgment of the trial court.

## SUPPLEMENTAL OPINION ON REHEARING

Castillo moves for rehearing, contending that, fairly read, his appellate complaint about the letters that his daughter wrote to him after he purportedly molested her concerned her testimony about the content of these letters, not the letters themselves. Thus, Castillo argues, he preserved error as to the exclusion of his daughter's testimony about these letters for appellate review.

24

We deny Castillo's motion for rehearing, but withdraw our opinion of March 5, 2019, and substitute this opinion, including its supplemental opinion on rehearing, in the original opinion's place. Our judgment remains unchanged.

Castillo's argument concerning the preservation of error is plausible. Assuming that he preserved this error for our review and further assuming that the trial court erred in excluding his daughter's testimony about the letters on the ground of relevance, we hold that any error in excluding her testimony was harmless.

Even if a trial court errs in excluding evidence, we will not reverse the defendant's conviction unless he shows that the error affected his substantial rights. TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). An error affects one's substantial rights only if it had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373; *see also Jacobson v. State*, 398 S.W.3d 195, 204 (Tex. Crim. App. 2013) (erroneous ruling doesn't affect substantial rights unless it seriously affects verdict or renders trial fundamentally unfair); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011) (no reversible error if appellate court has fair assurance that error did not influence jury or influenced it only slightly). In assessing the effect of the error, we consider the record as a whole. *See Gonzalez*, 544 S.W.3d at 373.

The daughter's testimony, given outside the presence of the jury, was cursory. Defense counsel made the following proffer:

Q. [Y]ou would correspond with your dad after he moved out of the house; is that right?

A. Yes, sir.

Q. Okay. And do you remember sending him letters?

A. Yes.

Q. And do you remember some specific times back in, you know, 2014 or 2015 writing him letters?

A. I don't remember the years, but I do remember maybe some letters, yes.

Q. Do you remember that in some of the letters you would say that you wanted to, you know, get some photographs and send him pictures of you and the other kids?

A. Yes, sir.

Q. Did—you know, that you wanted to say hi and that you were sad that he might not come back for your graduation?

A. Uh-huh. Yes, sir.

Q. Did you invite him to write you back?

A. Yes.

Q. Okay. And in these letters were you being polite, you were being nice, you were being kind?

A. Yes, sir.

Q. In fact to the point of saying, I hope you're doing all right?

A. Uh-huh.

Castillo contends that this testimony was relevant because it shows that his daughter continued to have a warm, affectionate relationship with him after he supposedly had molested her and thus tended to undermine her molestation

26

testimony. He argues that the exclusion of this evidence was harmful because the complainant's testimony against him was weak and the State therefore heavily leaned on his daughter's testimony that Castillo also molested her to support its case.

Viewed in light of the record as a whole, the exclusion of the proffered testimony did not affect Castillo's substantial rights. Castillo did not challenge the legal sufficiency of the evidence. The complainant's credibility was tried to the jury; her testimony, standing alone, is legally sufficient evidence to support Castillo's conviction. *See* TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1); *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.). A reasonable jury therefore could have found that that the State had proved Castillo's guilt beyond a reasonable doubt without Castillo's daughter's testimony.

We nonetheless agree that Castillo's daughter's testimony that he also molested her likely swayed the jury to render a guilty verdict. The testimony of another child victim is damning evidence, which is why the law requires the State to make a preliminary showing outside the jury's presence that the testimony likely to be admitted will support a finding that the defendant did what this other victim alleges beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. art 38.37, §§ 2(b), 2-a. Castillo, however, neither disputes that the State made this preliminary showing nor contests the sufficiency of his daughter's trial testimony.

In contrast, his daughter's excluded testimony about the content of the letters that she wrote to him was brief and anodyne. The politeness, niceness, and kindness she expressed in letters to her father, who was in incarcerated at the time, do not contradict her account of molestation. Nor does her testimony about the contents of the letters establish that she and her father had a close relationship. It is unlikely that a jury confronted with Castillo's daughter's minimal testimony about the letters would have concluded that their contents were so inconsistent with her testimony that her father molested her as to significantly undermine its credibility.

Considered in the context of the entire record, Castillo's daughter's testimony about the contents of her letters would have had little or no influence on the jury's verdict. We therefore conclude that any error in the exclusion of her testimony as to these letters did not affect Castillo's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373; *Bradshaw*, 342 S.W.3d at 93.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Publish.  TEX. R. APP. P. 47.2(b).

28