# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00583-CR

---

**Derrick Jamal McKenzie, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 155TH DISTRICT COURT OF FAYETTE COUNTY**
**NO. 2018R-117, THE HONORABLE JEFF R. STEINHAUSER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Derrick Jamal McKenzie was charged with capital murder for allegedly killing Sandra Pfeiffer while committing or attempting to commit robbery. *See* Tex. Penal Code § 19.03. At the time of the offense, McKenzie was sixteen years old, and the case was transferred from a juvenile court to a criminal trial court. *See* Tex. Fam. Code §§ 53.04-.07, 54.02. At the end of the guilt-innocence phase, the jury found McKenzie guilty of capital murder. The trial court automatically assessed McKenzie's punishment at life imprisonment with the possibility of parole. *See* Tex. Penal Code § 12.31(a)(1). In one issue on appeal, McKenzie argues that the trial court erred by sustaining the State's objection to the admission of a recorded interview of one of the testifying witnesses. We will affirm the trial court's judgment of conviction.

BACKGROUND

Before the murder, McKenzie was arrested for another offense, placed in handcuffs behind his back, and then taken to a juvenile processing office. McKenzie escaped from the facility but was unable to remove his handcuffs; however, he was able to move his handcuffed hands to the front of his body. After escaping, McKenzie travelled to his family's property where several family members were living in separate homes. One of the relatives who lived on the property was McKenzie's uncle Raymond McKenzie.[1] At the time relevant to this offense, Raymond was dating Pfeiffer. On the night in question, Pfeiffer drove to Raymond's home in her Jeep and spent the night. In addition, another one of Raymond's nephews, Octavian McKenzie, also spent the night. That night, McKenzie made it to Raymond's house, went inside the home, and interacted with Octavian.

After McKenzie arrived at the home, Raymond woke up early in the morning to drive to work. Several hours later, Raymond called Pfeiffer to wake her up for work. When he could not reach her after calling her multiple times, Raymond called his sister to check on Pfeiffer. Raymond's sister walked to Raymond's house, entered the home, saw Octavian on the living room couch, assumed he was asleep, and walked to Raymond's bedroom where she discovered Pfeiffer's dead body. After seeing Pfeiffer's body, Raymond's sister went to a nearby relative's home, and the relative called the police. Several law-enforcement officers responded to the 911 call, including Ranger Brent Barina.

After leaving Raymond's property, McKenzie drove to the home of a friend of one of his relatives, where the police later discovered Pfeiffer's Jeep. While McKenzie was at

---

[1] Because McKenzie and several of the witnesses at trial share the same surname, we will refer to McKenzie's relatives by their first names for ease of reading.

the friend's house, his family members drove to the house to pick him up, and one of his relatives called the police to report that McKenzie had been found. When McKenzie was arrested, he was still in the handcuffs that he had on when he escaped, and those handcuffs were collected for evidence. McKenzie was transported to the police station for questioning. During a recorded interview, McKenzie made the following statements:

- He went to Raymond's home and hung out with Octavian until Raymond left for work;

- He went into Raymond's bedroom after Raymond left and after Octavian went to sleep and took Pfeiffer's keys to her Jeep, took Pfeiffer's cellphone, and used the phone to check his Facebook page;

- Pfeiffer heard him enter the bedroom and tried to stab him with a knife;

- He grabbed the knife from Pfeiffer, and she ran at him and fell on the knife;

- Pfeiffer started screaming;

- He went to make sure that Octavian was still asleep and that no one else heard the screaming;

- He did not know what to do after Pfeiffer started screaming and did not want her to wake up Octavian so he continued stabbing her "so she would be quiet";

- Pfeiffer's breathing became shallower, and he hid the knife under Raymond's bed;

- The knife was "a big butcher knife" with a "black" handle;

- He changed out of his shorts, placed the shorts under a bed in one of the guestrooms, took a shower, and changed into different clothes; and

- He left Pfeiffer's phone at Raymond's home because he was in a hurry and drove away in her Jeep.

3

At the conclusion of the interview, Ranger Barina took swabs of McKenzie's fingers for DNA testing.

Following the interview, Ranger Barina went to Raymond's house and found a knife with a black handle with blood on it under Raymond's bed, a pair of shorts with blood stains under a bed in one of the guestrooms, and another knife in the guestroom. In addition, Ranger Barina collected Pfeiffer's phone, and he discovered during the investigation that the phone "was logged into . . . McKenzie's Facebook page and it appeared that [McKenzie] had been reading some messages his father had sent him through Facebook."

During the investigation, testing performed on the handcuffs that McKenzie was wearing before his apprehension for this offense, on the knife recovered from Raymond's bedroom, and on the knife and shorts discovered in the guestroom all had a positive presumptive result for the presence of blood. DNA testing performed on those items showed that the contributor to the DNA profile obtained from all the items was Pfeiffer "to a reasonable degree of scientific certainty." In addition, a fingerprint obtained from the driver's side door of Pfeiffer's Jeep matched McKenzie's known fingerprints. The autopsy performed on Pfeiffer's body revealed that she had sustained 35 sharp-force injuries, including stabs and incision injuries, and that she sustained four potentially life-threatening injuries to her neck, chest, back, and abdomen.

After considering the evidence presented at trial, the jury found McKenzie guilty of capital murder.

## DISCUSSION

On appeal, McKenzie contends that the trial court abused its discretion when it determined that a recording of an interview of Octavian by the investigating police officers

should not be admitted under the rule of optional completeness found in Rule 107 of the Rules of Evidence. *See* Tex. R. Evid. 107.

During his direct testimony, Octavian referenced the different times that he spoke with the police. Octavian testified that he spoke with the police officers when they first arrived at the home and told them that he was asleep and did not see or hear anything related to the offense. This interaction was not recorded. Octavian then testified that he spoke with the officers later that same day and told them that he saw McKenzie walking back and forth with a backpack and heard "something"; however, Octavian also said that he did not actually hear anything and changed his story because the police were treating him like a suspect and because he was trying to tell them what he thought they wanted to hear. This interaction was also not recorded. Next, Octavian testified that he went to the police station to provide a formal statement and told the officers that he let McKenzie into the home on the night in question and fell asleep before the offense occurred. In addition, Octavian testified that what he "told them that third time was the whole truth." This formal interview was recorded. The State neither asked any specific questions about the interview nor attempted to offer any portions of the recorded interview into the record either by reading them or offering clips of the interview during its examination. Further, Octavian explained that he was arrested for giving a false statement to the police and that when the officers later approached him about giving a fourth statement, he told the officers that he did not have anything else to say on the matter.

While cross-examining Octavian, McKenzie asked Octavian if he remembered his third statement to the police and then sought to admit a recording of the statement under the rule of optional completeness because, according to McKenzie, Octavian's testimony gave the false impression to the jury that the only thing he mentioned during the third statement was that he

5

was asleep during the offense even though Octavian made several other statements, including a statement regarding a knife. At that point, the trial court did not rule on the admissibility of the recording but explained that it would keep the request under advisement.

During further cross-examination by McKenzie, Octavian admitted that he told the police during his second statement that he woke up on the night in question after hearing screaming and that he saw McKenzie walking through the house. Further, Octavian testified that in the recorded interview he told the police that he was asleep at the time of the offense but also told them that he woke up at some point. Additionally, Octavian admitted that his statement to the police in which he said that he woke up and saw McKenzie with a knife was inconsistent with his trial testimony, that there were other inconsistencies between his testimony and the third statement that he gave to the police, that he gave "[a] lot" of different statements about the events in question, and that he made some of his statements during the recorded interview because the police were threatening to arrest him. McKenzie again moved to admit the recording of the third interview under the rule of optional completeness and argued that Octavian's earlier testimony left a false impression in the minds of the jurors that he was asleep during the offense. The State objected and argued that the rule of optional completeness does not apply simply because a witness refers to a prior statement and highlighted that Octavian admitted that there were inconsistencies in his statements. After a hearing outside the presence of the jury, the trial court sustained the State's objection.

On appeal, McKenzie argues that the trial court erred because the recording was admissible under the rule of optional completeness to counter the false impression presented to the jury through Octavian's testimony. McKenzie highlights that Octavian admitted that he had a motive to lie to the police because the police thought that he was a suspect and therefore urges

6

that Octavian "was quite capable of lying and creating a false impression to the jury" and that "[t]here can be no greater false impression given to a jury tha[n] a witness who testifies that he told the 'whole truth' . . . can be proven to have lied." Moreover, McKenzie argues that the rule of optional completeness was designed to prevent this type of false impression and that the trial court's ruling allowed Octavian to "continue his falsehoods" and removed from the defense "the weapon he had to counter the false impression left by [Octavian]'s self serving statement."[2]

Appellate courts review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

---

[2] On appeal, the State contends that McKenzie failed to preserve this issue for appellate consideration. When McKenzie sought to admit the recording of Octavian's interview, the trial court questioned McKenzie about why the entire recording should be admitted as opposed to specific statements from the recording, and McKenzie repeatedly argued that the entire recording was necessary to allow the jury to understand Octavian's testimony regarding his third interview and offered a copy of the recording. On appeal, the State argues that McKenzie was required to provide an offer of proof regarding the contents of the recording but failed to preserve this issue for appellate consideration by seeking to have the entire recording admitted without identifying the specific portions that should be admitted. *See* Tex. R. Evid. 103; *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). Given our ultimate disposition, we will assume for the purpose of resolving this issue that McKenzie preserved this complaint for appellate consideration. *Cf. Castillo v. State*, 573 S.W.3d 869, 878 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (explaining that objection to admission of entire recording was sufficient to preserve issue for appellate consideration even though defendant did not "identify specific statements within the interview that were hearsay" where defendant "objected to the entirety of the interview as hearsay and maintain[ed] this position on appeal").

In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

The rule of optional completeness is found in Rule 107 of the Rules of Evidence, which reads, in relevant part, as follows:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.

Tex. R. Evid. 107.

The rule is an exception to the Rules of Evidence prohibiting the admission of hearsay, *Castillo v. State*, 573 S.W.3d 869, 877 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see* Tex. R. Evid. 801-02, "and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party," *Whipple v. State*, 281 S.W.3d 482, 500 (Tex. App.—El Paso 2008, pet. ref'd). However, the rule only allows for the introduction of "those parts of a recorded statement necessary to make the previously admitted evidence fully and fairly understood." *Castillo*, 573 S.W.3d at 879. "[T]he rule is not invoked by the mere reference to a document, statement, or act." *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007); *see Mick v. State*, 256 S.W.3d 828, 831 (Tex. App.—Texarkana 2008, no pet.); *see also Goldberg v. State*, 95 S.W.3d 345, 387 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (observing that reference to quotation in statement insufficient to invoke rule). "Some portion of the matter sought to be 'completed' must have actually been introduced into evidence." *Rios v. State*, 230 S.W.3d 252, 257 (Tex. App.—Waco 2007, pet.

ref'd); *see also Washington v. State*, 856 S.W.2d 184, 186 (Tex. Crim. App. 1993) (explaining that "the rule is not implicated until such time as a party attempts to have a portion of it 'given in evidence'"). Just as how a party "cannot rely on its own questioning as an invitation to rebuttal," *Hatley v. State*, 533 S.W.2d 27, 29 (Tex. Crim. App. 1976), a "party who opens the" evidentiary door "may not then invoke the rule of optional completeness to further exploit an improper line of questioning," *West v. State*, 121 S.W.3d 95, 103 (Tex. App.—Fort Worth 2003, pet. ref'd).

When the State questioned Octavian at trial, Octavian mentioned that he gave more than one statement to the police, that he told the police that he was asleep and did not see or hear anything, that he changed his story and later told the police that he saw McKenzie walking around, that he told the police during the recorded interview that he was asleep, and that what he said during the recorded interview was the truth; however, the State did not offer into evidence any portion of the recorded interview and did not specifically reference any portion of his interview in its questions. *See* Tex. R. Evid. 107; *Whipple*, 281 S.W.3d at 500. The defense is the only party that sought specific information about that interview. In light of this, the trial court could have reasonably concluded that his references to his out-of-court statements on direct were insufficient to warrant the application of the rule of optional completeness. *See Araiza v. State*, 929 S.W.2d 552, 555-56 (Tex. App.—San Antonio 1996, pet. ref'd) (noting that witness was asked about "particular statements" given in his prior confession but concluding that "the trial court did not err in excluding the statement" because at no point was "any portion of [the witness]'s statement . . . read to the jury"). Further, while Octavian provided more specific details about his prior statements during his cross-examination, that testimony was elicited by the defense. McKenzie may not "open the door" by introducing some part of Octavian's out-of-court statement during cross-examination and then demand introduction of the entire statements

9

under Rule 107. *See West*, 121 S.W.3d at 103; *see also Pinkney v. State*, 848 S.W.2d 363, 367 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (explaining that document is "not admissible in its entirety" when used to cross-examine witness).[3]

For these reasons, we overrule McKenzie's issue on appeal.

## CONCLUSION

Having overruled McKenzie's issue on appeal, we affirm the trial court's judgment of conviction.

---

[3] In his brief, McKenzie primarily relies on three appellate opinions as support for his arguments that the recording should have been admitted, but we do not believe those cases compel a conclusion that the trial court abused its discretion. In *Elmore v. State*, the trial court admitted a letter written by a police chief to the defendant's wife that was offered by the State but excluded a letter written by the defendant's wife to the chief that was offered by the defendant, and our sister court of appeals determined that the trial court abused its discretion by excluding the second letter "because it completed the communication between the parties." 116 S.W.3d 809, 814 (Tex. App.—Fort Worth 2003, pet. ref'd). In the current case, no out-of-court statement by Octavian like the one present in *Elmore* was admitted into evidence. In the next case relied on by McKenzie, *Prince v. State*, the trial court admitted a recording of an entire forensic interview, but our sister court did not decide whether the trial court abused its discretion when making its ruling. 574 S.W.3d 561, 573 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). In the final case relied on by McKenzie, *Walters v. State*, the Court of Criminal Appeals determined that the trial court abused its discretion by excluding a "911 conversation" offered by the defendant. 247 S.W.3d 204, 220 (Tex. Crim. App. 2007). However, unlike in this case, the trial court in *Walters* had already admitted other out-of-court statements by admitting three 911 calls offered by the State, including one made by the defendant. *Id.* at 214-15. Additionally, the Court of Criminal Appeals explained that the final 911 recording should have been admitted because the State "opened the door to the admission of the . . . 911 call" by cutting off the answer from one of its witnesses and creating the false impression that the defendant offered no explanation for why he shot his brother when in fact the defendant explained in the final 911 recording that he was acting in self-defense. *Id.* at 215, 220-21. Here, in contrast, the State did not redirect Octavian's answers or otherwise prevent him from completing his answers, and Octavian admitted in his testimony that he gave contradictory statements to the police.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:   March 17, 2021

Do Not Publish