**Opinion issued September 5, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00154-CR**

———————————

**NATHANIEL CHARLES YOUNG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 96532-CR (Counts I, II, III, IV, and V)**

---

## MEMORANDUM OPINION

A jury found appellant, Nathaniel Charles Young, guilty of five "counts" of the felony offense of aggravated sexual assault of a child[1] and assessed his punishment at confinement for life for each "count," to run consecutively. In two

---

[1] *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B), (a)(2)(B), (e).

issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in admitting certain evidence.

We affirm.

## Background

The complainant, A.Y., testified that she was born in 1997. Appellant was listed on her birth certificate as her father, but he was not her biological father. Yet, appellant raised the complainant, and she considered him to be her father.

The complainant also testified that she had five siblings. The complainant was the oldest child, P.Y. was the second oldest, L.Y. was the third oldest, N.Y. was the fourth oldest, M.Y., was the fifth oldest, and N.C.Y., II was the youngest child in the family. The complainant believed that appellant was the biological father of N.Y., M.Y., and N.C.Y., II.

According to the complainant, while growing up, her mother had a "really bad drug problem with meth[amphetamine], taking pills, [and] cocaine." The complainant's mother was "in and out of the house" a lot; she would sometimes leave for weeks at a time while abusing narcotics.

The complainant testified that when she was about five or six years old, she began living at 8031 Over Street in Pearland, Brazoria County, Texas. She lived

with P.Y., her maternal grandmother, and a nanny in a mobile home, one of the multiple homes on the property.[2]

The complainant further explained that when she was five years old, there was an inappropriate touching incident that occurred with appellant. According to the complainant, she was in the mobile home at the Over Street property. Appellant brought the complainant into the front room of the home, laid down on the bed, and told the complainant "to touch him" on his penis. The complainant touched appellant's penis underneath his clothes because she "thought it was okay." Appellant also touched the complainant's vagina under her clothing. The complainant clarified that appellant did not penetrate her vagina; he only touched the "top" of it. The complainant stated that the inappropriate touching by appellant happened twice while she was living at the Over Street property.[3] The complainant further testified that when she was five or six years old and living at the Over Street property, appellant had the complainant perform oral sex on him, meaning appellant had the complainant put her mouth on appellant's penis.

Later during her childhood, the complainant moved to a mobile home on West Adoue Street in Alvin, Brazoria County, Texas, where she lived with her

---

[2] The complainant testified that her nanny, whom she called Aunt Jennie, took care of her and P.Y. when appellant and the complainant's mother were not around.

[3] The complainant stated that the inappropriate touching incidents occurred before her nanny lived in the mobile home with her and P.Y.

3

mother, appellant, P.Y., L.Y., N.Y., and M.Y. The complainant recounted that when she was about ten or eleven years old, appellant had the complainant perform oral sex on him, meaning that appellant had the complainant put her mouth on his penis. Appellant told the complainant, "It's okay. Everybody does it. That's how you show love." (Internal quotations omitted.) After the complainant performed oral sex on appellant, he ejaculated on himself. The complainant estimated that she performed oral sex on appellant about eight to ten times at the mobile home on West Adoue Street.[4]

The complainant further testified that during her childhood, she also lived at 2815 or 2819 Shady Creek Lane in Oyster Creek, Brazoria County, Texas. And while living there, appellant began having vaginal intercourse and anal intercourse with her.[5] The complainant recalled that appellant first engaged in vaginal intercourse with her when she was thirteen years old. At that time, appellant had

---

[4] The complainant also testified that there were times that she performed oral sex on appellant while he was driving. Appellant "would pull his penis out and tell [her] to perform oral sex on him." This occurred more than five times.

[5] The complainant noted that before she lived at the Shady Creek Lane property, appellant had penetrated her vagina with his fingers. The complainant stated that most of the touching of her vagina that occurred around 2002 happened at the Over Street property. Additionally, the complainant testified that appellant penetrated her vagina with his finger while the complainant lived at the Shady Creek Lane property before she turned fourteen years old. According to the complainant, most of the touching of her vagina by appellant around March 2011, when she was thirteen years old, happened at the Shady Creek Lane property. Further, the complainant stated that appellant had her perform oral sex on him while living at the Shady Creek Lane property before she turned fourteen years old.

4

the complainant in the primary bedroom of the home, and at first, appellant only touched her vagina.[6] But then appellant asked the complainant if she "was ready." The complainant did not understand what appellant meant, and appellant told her that it was going to hurt but "it would be pleasurable in the end." Appellant then put his penis in the complainant's vagina. Appellant did not wear a condom. Afterwards, appellant told her that the pain would go away and that she "was a good girl."

The complainant also explained that while living at the Shady Creek Lane property, there were three times when appellant engaged in anal intercourse with her. The complainant went into appellant's bedroom, and appellant told her that "he wanted to try anal." Appellant stated that "it was going to hurt and that [they] had to make sure that there was a lot of lotion." Having anal intercourse with appellant hurt the complainant. When asked how old she was at the time appellant engaged in anal intercourse with her, the complainant stated that "it was after 2010 because [her] little brother was already born."

Additionally, the complainant testified that there was a time when she lived at the Shady Creek Lane property that appellant had her and P.Y. in his bedroom together so that they could "perform sexual acts on him" at the same time. The

---

[6]     The complainant explained that generally before appellant would have vaginal intercourse with her, appellant would begin by penetrating her vagina with his fingers.

5

complainant recalled that on that day, she and P.Y. asked appellant if they could go to a friend's house, and appellant said that they could "as long as [they] did something for him," meaning that they needed to have vaginal intercourse with appellant. In appellant's bedroom, appellant penetrated the complainant's vagina with his penis as well as P.Y.'s vagina.

The complainant also testified that at some point during her childhood, she moved back to the Over Street property, and while living there for the second time, appellant engaged in vaginal intercourse with the complainant about five or six times. Appellant ejaculated during those times. The complainant noted that she got her period when she was about thirteen years old, and appellant continued to ejaculate inside of her body even after she began having her period. This caused the complainant to worry about becoming pregnant; she was also worried about contracting a sexually transmitted disease.

Additionally, the complainant testified that during her childhood, appellant had sexually assaulted her on Mustang Road in Alvin, at Parker's Cut in Brazoria County, at Swan Lake in Brazoria County, and at Bryan Beach in Brazoria County. According to the complainant, appellant sexually assaulted her at those locations "[f]or years," and when it would occur, she and appellant would be gone for hours at a time.

As to Mustang Road, the complainant recalled that she, appellant, and the complainant's paternal grandfather would go cut grass at a property on Mustang Road, which the complainant thought her paternal grandfather owned. On one occasion when just appellant and the complainant were at the property, appellant took her "to the shed that was right on the property and sexually assaulted" her. Appellant made "a little pallet on some cardboard boxes and some paper," and he had vaginal intercourse with the complainant. Appellant penetrated her vagina with his penis. The complainant believed that she was either in elementary school or middle school at the time. She also testified that she may have been between the ages of five years old and nine years old when the vaginal intercourse occurred.

As to Parker's Cut, the complainant explained that the area was "a boat ramp where you go out and go fishing." Parker's Cut was a long road with water on each side, and at the very end of the road was a boat ramp. Appellant and the complainant would tell everyone that they were going fishing, either during the day or at night. Out at Parker's Cut, appellant would engage in either vaginal intercourse or anal intercourse[7] with the complainant. That would occur either

---

[7] The complainant explained that appellant engaged in anal intercourse with her at Parker's Cut one time. It was nighttime. She and appellant "got all the fishing equipment together" and "went out to Parker's Cut." They attempted to fish, "but nothing was biting." As they sat, appellant told the complainant that "he wanted anal again." She did not want to engage in anal intercourse because it had hurt previously, but appellant "told [her] that he would be easy." Appellant engaged in

7

inside appellant's truck or outside of the truck. According to the complainant, the first time that appellant sexually assaulted her at Parker's Cut was in 2011.

As to Swan Lake, the complainant explained that the area was a "boat ramp" and a "water area." Appellant would park his truck in a "marsh-type" area and then engage in vaginal intercourse with the complainant, who was either fourteen years old or fifteen years old at the time. This occurred three times. Appellant would use the excuse of taking the complainant fishing before he would take her to Swan Lake to sexually assault her.

As to Bryan Beach, the complainant testified that she and appellant would go out to the area, which was secluded, to "shoot[] guns." And either before or after the shooting, appellant would engage in vaginal intercourse with the complainant. The complainant estimated that appellant engaged in vaginal intercourse with her about ten times at Bryan Beach.

The complainant further testified that over the course of her childhood, appellant had ejaculated inside of her body more than a hundred times. And she explained that appellant continued sexually assaulting her until 2014.[8] According to the complainant, whenever appellant engaged in sexual conduct with the complainant, he would tell her that she "was a good girl."

---

anal intercourse with the complainant for about five minutes, and it hurt the complainant.

[8] The complainant stated that appellant sexually assaulted her for twelve years.

8

The complainant also noted that she never tried to "fight [appellant] off" because appellant had told her that it was "how you show love." And appellant would tell the complainant not to tell anyone. He told her that he would get "in trouble," "nobody would believe [her]," and her "siblings would be taken away from [her]" by child protective services.[9] The complainant was worried about her siblings being "split up," and that "played a good part" in her being willing to engage in sexual conduct with appellant. Further, according to the complainant, appellant also "made a deal" with the complainant that if she let him engage in sexual conduct with him, he would leave her younger siblings alone. And the complainant testified that when she was younger, like around six years old or seven years old, appellant would give her "Swiss Rolls" as a reward for engaging in sexual conduct with him.

P.Y. testified that she was born in 1999, and she had five siblings. The complainant was her older sister, and L.Y., N.Y., M.Y., and N.Y.C., II[10] were younger than her. Although appellant was listed on her birth certificate as her

---

[9] According to the complainant, when she was about thirteen or fourteen years old, she told her mother about "what [had] happened with [appellant]," but her mother did not care and did not notify anyone, which upset the complainant. Because her mother did not protect her, the complainant did not believe that anyone else would either.

[10] P.Y. noted that N.Y.C., II had "changed" his name to L.J. For clarity, we will refer to him as N.Y.C., II in this opinion.

9

father, appellant was not her biological father.[11] P.Y. noted that she had the same mother as the complainant, and their mother used narcotics during their childhood.

According to P.Y., when she was a child, she lived at the Over Street property with her mother, appellant, and the complainant. While living at the Over Street property, P.Y. "walked in on [appellant] and [the complainant]," and appellant "had his penis inside of [the complainant]." Appellant then asked P.Y. to "come and lay on the bed" and "to take [her] pants off." He started "touching [her] vagina." According, to P.Y., her first sexual contact with appellant occurred before September 28, 2002.

P.Y. also explained that appellant engaged in sexual conduct with her other times too. While living at the Shady Creek Lane property, appellant made P.Y. put her mouth on his penis, and "[t]here [were] multiple times where [appellant] would put his penis inside [her] vagina." Further, appellant put his penis in P.Y.'s anus "multiple times"; P.Y. estimated that appellant engaged in anal intercourse with her at least ten times during her childhood. P.Y. also stated that appellant made her put her mouth on his penis "[t]oo many times to count." And she believed that appellant put his penis in her vagina "[w]ay more than 20 [times]" while growing

---

[11]     P.Y. also stated that she did not think that appellant was M.Y.'s biological father because her mother "was messing around with another man" and her relationship with appellant was "on again, off again" with appellant throughout P.Y.'s life.

up. According to P.Y., appellant, while engaging in sexual conduct with her, would ejaculate on the bed, on her stomach, and in her mouth.

Additionally, P.Y. noted that appellant forced her to engage in sexual conduct with both appellant and the complainant at least three times. Appellant told P.Y. and the complainant that if they did not "tell anybody," then he "wouldn't do it to [their] little sisters." P.Y. also explained that appellant would offer her "Dr. Peppers and cigarettes" after she engaged in sexual conduct with him; appellant "would bribe [her] with cigarettes." Appellant continued engaging in sexual conduct with P.Y. until she was about twelve years old or thirteen years old.

M.Y. testified that she was born in June 2006, and appellant was her biological father. M.Y. had five siblings, and the complainant was the oldest child in the family. M.Y. and the complainant shared the same mother.[12]

M.Y. recalled that when she was six years old, she lived at the Shady Creek Lane property. One evening, M.Y. wanted to go with her mother, who was leaving their home, because she "never got to spend time with [her]." M.Y. "thr[ew] a big fit about it because [she] wanted to go," but she was not allowed to. After M.Y.'s mother left, M.Y. stayed home with appellant and her paternal grandmother. Appellant took M.Y. into his bedroom to calm her down, and he gave M.Y. his

---

[12] M.Y. noted that during her childhood, her mother and appellant used narcotics together and appellant gave M.Y.'s mother narcotics. M.Y.'s mother would "pass out" from her narcotics use.

11

cellular telephone so that she could play games. Although M.Y. was focused on the cellular telephone, she noticed that appellant was "moving around a lot." According to M.Y., at some point, appellant put on "a towel wrapped around his waist or around his penis." Appellant then asked M.Y. if she "wanted to put [her] mouth on" his penis. M.Y. listened to appellant and tried to "[s]tick his penis in [her] mouth." M.Y. recalled that appellant's penis was erect at the time, and she could not put his penis in her mouth because her mouth was "too small." Appellant then pushed M.Y. away. M.Y. did not tell anyone about what had happened because she "didn't know what [appellant had] d[one]" and she did not understand what had happened; M.Y. trusted appellant, so it was confusing.

M.Y. further testified that appellant engaged in sexual conduct with her again when she was eleven years old. M.Y. had gone to her friend's house and spent the night. At some point, M.Y.'s paternal grandmother and appellant showed up and told her that she "needed to hurry up and get dressed." M.Y. then went with her paternal grandmother and appellant to buy a truck for appellant. After picking up the truck, appellant and M.Y. drove to a car wash. M.Y. explained that she loved car washes as a child because of "[t]he lights and the pretty soap." Appellant knew how much she liked car washes. While they went through the car wash, appellant began asking M.Y. "inappropriate questions." According to M.Y., appellant "asked [her] if [she] wanted to have sex with him." M.Y. "froze" and did

12

not "know how to respond." She "didn't know if [her] answer would make him mad or upset."

Appellant then "slid his hands into [her] pants." M.Y. was not wearing underwear at the time because she had been in a rush to leave her friend's house. M.Y. felt scared, disgusted, and grossed out. M.Y. felt appellant's fingernails, and appellant put his fingertips inside her vagina. M.Y. stayed "froze[n]." After the car wash ended, M.Y. left with her paternal grandmother, who had been waiting for appellant and M.Y. outside of the car wash. M.Y. did not tell anyone about what happened because she was "scared if [she] said something [she] would get disowned." M.Y. loved her paternal grandmother and thought she would be upset with M.Y. if M.Y. said anything because appellant was M.Y.'s paternal grandmother's son. M.Y. recalled that she did not have a good relationship with her mother at the time, and M.Y.'s paternal grandmother felt "like a mom."

Additionally, M.Y. testified that she was at an "RV park" in Oyster Creek when she was eleven years old, when one of her sisters and her sister's boyfriend tried to get M.Y. to smoke marijuana. Appellant was also there, and he encouraged M.Y.'s sister to have M.Y. smoke marijuana. M.Y. thought something was going to "happen to [her]" related to appellant because "of his movements." Appellant wanted M.Y. to "come with him to go dumpster diving after smoking"

marijuana, but she declined. M.Y. was afraid that appellant "was going to try to do something else" to her.[13]

## Sufficiency of Evidence

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction for each "count" because "[a]ll the State did . . . was lead the [complainant] to agree some alleged acts occurred and where they might have occurred, without any specifics as [to] time, place, content and reliability, . . . dates or months" and the complainant "failed to adequately communicate to the jury that the sexual contact occurred, if at all."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the responsibility of the

---

[13] We note that additional witnesses testified at trial. The Court has reviewed the complete record in the instant appeal, including all testimony and evidence presented during trial. *See* TEX. R. APP. P. 47.1, 47.4; *Adell v. State*, No. 01-21-00439-CR, 2023 WL 4938111, at *32 n.54 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, pet. ref'd) (mem. op., not designated for publication).

14

fact finder to resolve conflicts fairly in testimony, weigh the evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. That said, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

We note that in reviewing the sufficiency of the evidence, a court must consider both direct and circumstantial evidence and any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (evidence-sufficiency standard of review same for both direct and circumstantial evidence). Circumstantial evidence is just as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Wise*, 364 S.W.3d at 903; *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *See Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d

15

at 13. The jury, as the judge of the facts and credibility of the witnesses, could choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor or if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means and the victim is younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B). The uncorroborated testimony of a child complainant is alone sufficient to support a conviction for the offense of aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

Here, the jury found appellant guilty of five "counts" of the felony offense of aggravated sexual assault of a child. As to "count" one, the indictment alleged that on or about June 1, 2002, appellant "intentionally or knowingly cause[d] the penetration of the mouth of [the complainant], a child younger than fourteen . . . years of age and not [appellant's] spouse, by the sexual organ of [appellant]." And as to "count" three, the indictment alleged that on or about March 1, 2011, appellant "intentionally or knowingly cause[d] the penetration of

16

the mouth of [the complainant], a child younger than fourteen . . . years of age and not [appellant's] spouse, by the sexual organ of [appellant]."

The complainant testified that she was born in 1997, and when she was five or six years old, she lived at the Over Street property. The complainant stated that appellant had the complainant perform oral sex on him, meaning she put her mouth on his penis, when she lived at the Over Street property and was five or six years old. Further, the complainant testified when she was about ten or eleven years old, she lived in a mobile home on West Adoue Street. In that home, appellant also had the complainant perform oral sex on him, meaning appellant had the complainant put her mouth on his penis. The complainant estimated that she performed oral sex on appellant about eight to ten times at the mobile home on West Adoue Street. The complainant also explained that there were more than five other times when she performed oral sex on appellant while he was driving. Appellant "would pull his penis out and tell [her] to perform oral sex on him." And the complainant testified that she performed oral sex on appellant while she was living at the Shady Creek Lane property before she turned fourteen years old. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii), (a)(2)(B).

As to "count" two, the indictment alleged that on or about June 1, 2002, appellant, "intentionally or knowingly cause[d] the penetration of the sexual organ of [the complainant], a child younger than fourteen . . . years of age and not

[appellant's] spouse, by the finger of [appellant]." And as to "count" five, the indictment alleged that on or about March 1, 2011, appellant "intentionally or knowingly cause[d] the penetration of the sexual organ of [the complainant], a child younger than fourteen . . . years of age and not [appellant's] spouse, by the finger of [appellant]." The complainant testified that while living at the Shady Creek Lane property and before she turned fourteen years old, appellant penetrated her vagina with his finger. The complainant also testified that before she lived at the Shady Creek Lane property, appellant had penetrated her vagina with his fingers. The complainant stated at trial that most of the touching of her vagina by appellant that occurred around 2002 happened at the Over Street property. And around March 2011, when the complainant was thirteen years old, most of the touching of her vagina by appellant occurred at the Shady Creek Lane property. Additionally, according to the complainant, before appellant began engaging in vaginal intercourse with the complainant, appellant would penetrate her vagina with his fingers. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B).

Finally, as to "count" four, the indictment alleged that on or about March 1, 2011, appellant "intentionally or knowingly cause[d] the penetration of the sexual organ of [the complainant], a child younger than fourteen . . . years of age and not [appellant's] spouse, by [appellant's] sexual organ." The complainant testified that appellant first engaged in vaginal intercourse with her when she was thirteen years

18

old and living at the Shady Creek Lane property. When that occurred, appellant had the complainant with him in the primary bedroom of the home, and he asked her if she "was ready." The complainant did not understand what appellant meant, and appellant told her that it was going to hurt but "it would be pleasurable in the end." Appellant then put his penis in the complainant's vagina.[14] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B).

Here, the complainant's testimony, standing alone, is sufficient evidence for the jury to convict appellant of the five "counts" of the offense of aggravated sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Johnson*, 419 S.W.3d at 671. And to the extent that appellant's arguments in his briefing focus on the credibility of the complainant's testimony or the consistency of the evidence, we note that the jury was the sole judge of the credibility of the witnesses at trial, and we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *See Williams*, 235 S.W.3d at 750; *see also Jenkins*, 870 S.W.2d at 628. In this case, the jury, as the exclusive judge of witness credibility, was

---

[14] The complainant also testified about another time when she was living at the Shady Creek Lane property, and appellant engaged in vaginal intercourse with both her and P.Y. At that time, appellant penetrated the complainant's vagina. Further, the complainant testified about numerous other incidents when appellant penetrated her vagina with his penis when the complainant was under fourteen years old, including incidents that occurred at the Over Street property, on Mustang Road, and at Parker's Cut. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B).

entitled to believe the complainant's testimony. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Rodriguez v. State*, No. 05-18-01448-CR, 2020 WL 881008, at *4 (Tex. App.—Dallas Feb. 24, 2020, no pet.) (mem. op., not designated for publication) (jury entitled to believe complainant's testimony even where testimony was "occasionally imprecise, particularly as to times and dates").

Viewing all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Accordingly, we hold that the evidence is sufficient to support appellant's conviction for five "counts" of the offense of aggravated sexual assault of a child.

We overrule appellant's first issue.

### Admission of Evidence

In his second issue, appellant argues that the trial court erred in admitting the testimony of P.Y. and M.Y. during the guilt and punishment phases of trial[15]

---

[15] Although appellant states in his second issue that the trial court erred in admitting the testimony of P.Y. and M.Y. during *both* the guilt and punishment phases of trial, he makes no specific argument as to the inadmissibility of the testimony during the punishment phase of trial. We note that during the punishment phase, evidence of extraneous offenses may be admitted if it is deemed relevant to sentencing by the trial court. *See Lamb v. State*, 186 S.W.3d 136, 141 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). And the jury may consider, during the punishment phase, evidence of extraneous offenses committed by the defendant if it finds beyond a reasonable doubt that the defendant committed the extraneous offenses. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).

20

because "[t]he trial court did not make any finding[] that the evidence likely to be admitted at trial [was] adequate to support a finding by the jury that [appellant] committed [a] separate [extraneous] offense beyond a reasonable doubt," the admission of testimony of P.Y. and M.Y. was contrary to Texas Code of Criminal Procedure article 38.37 and Texas Rule of Evidence 404(b), and appellant was harmed by the admission of the testimony.

A trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court's decision to admit evidence will be upheld if it is "within the zone of reasonable disagreement." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018); *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted). A trial court's ruling on the admission of extraneous offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim.

App. 2009). We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling, even if the trial court gives the wrong reason for the right ruling. *Id.*

"An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused." *Martinez v. State*, 190 S.W.3d 254, 262 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (internal quotations omitted). Generally, Texas Rule of Evidence 404(b) prohibits the admission of extraneous offense evidence to prove a person's character or to show that the person acted in conformity with that character. *See* TEX. R. EVID. 404(b). But when a defendant is being prosecuted for the offense of aggravated sexual assault of a child, evidence that the defendant committed one or more of certain enumerated sexual offenses against a child, including the offenses of attempted aggravated sexual assault of a child and aggravated sexual assault of another child,[16] "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE OF CRIM. PROC. ANN. art. 38.37, § 2; *see*

---

[16] *See Wishert v. State*, 654 S.W.3d 317, 330 (Tex. App.—Eastland 2022, pet. ref'd) ("Article 38.37, [s]ection 2(b) allows for the admission of evidence that the defendant . . . committed a separate offense of *a sexual nature against a child*; the 'child victim' of the separate offense need not be the victim of the offense for which the defendant is currently on trial.").

22

*also Jeansonne v. State*, 624 S.W.3d 78, 94–95 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("Essentially, article 38.37 is an evidentiary rule applicable to certain types of sexual abuse cases . . . that supersedes the application of Texas Rule of Evidence 404(b), and makes admissible certain extraneous offense evidence that [r]ule 404(b) does not."); *Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.) (article 38.37, section 2(b) allows admission of evidence that defendant had previously committed certain sexual offenses against non-victims of charged offense).

Before evidence of an extraneous offense committed against a person other than the complainant may be admitted under Texas Code of Criminal Procedure article 38.37, the trial court must conduct a hearing outside the presence of the jury and determine whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the [extraneous] offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a; *Castillo v. State*, 573 S.W.3d 869, 880 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). The evidence may consist solely of another child's testimony about the extraneous offense committed by the defendant. *Castillo*, 573 S.W.3d at 880; *see also Gutierrez v. State*, No. 01-19-00718-CR, 2021 WL 2931358, at *3 (Tex. App.—Houston [1st Dist.] July 13, 2021, pet. ref'd) (mem. op., not designated for publication).

Here, before any evidence of extraneous offenses committed against P.Y. or M.Y. was admitted at trial, the trial court conducted two article 38.37 hearings, outside the presence of the jury, during which P.Y. and M.Y. testified. Appellant does not dispute that these hearings were conducted. Instead, appellant complains that even though the trial court held the required article 38.37 hearings, the trial court did not explicitly find on the record that "the evidence likely to be admitted at trial [was] adequate to support a finding by the jury that [appellant] committed the [extraneous] offense[s] beyond a reasonable doubt." *See* TEX. CODE OF CRIM. PROC. ANN. art. 38.37, § 2-a.

To preserve a complaint for appellate review, a defendant must show that he made his complaint to the trial court by a timely and specific request, objection, or motion, and the trial court either ruled on his request, objection, or motion, or refused to rule, and he objected to that refusal. TEX. R. APP. P. 33.1(a*); Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The rationale of rule 33.1 is that if an objection is raised before the trial court as soon as error becomes foreseeable, the error may be addressed and possibly corrected or avoided. *Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009). Almost all error must be preserved by objection, or it is waived. *See Hull v. State*, 67 S.W.3d 215, 216–18 (Tex. Crim. App. 2002);

24

*Holland v. State*, 802 S.W.2d 696, 700–01 (Tex. Crim. App. 1991); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

In the trial court, appellant did not complain about or object to the trial court's failure to explicitly state on the record at the conclusion of its article 38.37 hearings that it had determined that "the evidence likely to be admitted at trial [was] adequate to support a finding by the jury that [appellant had] committed the [extraneous] offense[s] beyond a reasonable doubt." *See* Tex. Code of Crim. Proc. Ann. art. 38.37, § 2-a. Thus, we hold that appellant has failed to preserve for appellate review his complaint about the lack of an explicit finding.[17] *See Davis v. State*, No. 02-23-00119-CR, 2024 WL 976501, at *4 (Tex. App.—Fort Worth Mar. 7, 2024, pet. ref'd) (mem. op., not designated for publication) (holding

---

[17] Even if appellant had preserved his complaint, we note that Texas Code of Criminal Procedure article 38.37 does not require the trial court to make an explicit finding that the proffered extraneous offense evidence would support a finding by the jury that appellant committed the extraneous offense beyond a reasonable doubt. *See Davis v. State*, No. 02-23-00119-CR, 2024 WL 976501, at *5 (Tex. App.—Fort Worth Mar. 7, 2024, pet. ref'd) (mem. op., not designated for publication); *Gonzales v. State*, No. 04-21-00573-CR, 2022 WL 17970588, at *3 (Tex. App.—San Antonio Dec. 28, 2022, no pet.) (mem. op., not designated for publication) (rejecting defendant's argument that trial court erred by not making any "specific findings" under article 38.37 and noting that appellate court found no authority requiring trial court to make such "specific findings"); *Gutierrez v. State*, No. 01-19-00718-CR, 2021 WL 2931358, at *4 (Tex. App.—Houston [1st Dist.] July 13, 2021, pet. ref'd) (mem. op., not designated for publication) (finding no authority indicating that trial court must announce its article 38.37 findings in any particular format). Here, the trial court conducted the required article 38.37 hearings and later permitted P.Y. and M.Y. to testify. Thus, the trial court implicitly determined that the testimony of P.Y. and M.Y. was adequate to support a finding by the jury that appellant had committed the extraneous offenses beyond a reasonable doubt. *See Davis*, 2024 WL 976501, at *5.

defendant failed to preserve complaint trial court "did not make an explicit finding that the extraneous-offense evidence concerning his sexual abuse of [another child] was adequate to support a finding that he had committed the extraneous offense beyond a reasonable doubt"); *see also Corporon v. State*, 586 S.W.3d 550, 559–60 (Tex. App.—Austin 2019, no pet.) (holding defendant did not preserve complaint trial court failed to conduct article 38.37 hearing before it admitted extraneous offense evidence).

To the extent that appellant, in his briefing, also generally asserts that the admission of the testimony of P.Y. and M.Y. was contrary to Texas Code of Criminal Procedure article 38.37 and Texas Rule of Evidence 404(b), we note, as stated above, that article 38.37 provides an exception to rule 404(b), which generally prohibits the admission of extraneous offense evidence to prove a person's character or to show that the person acted in conformity with that character. *See* TEX. R. EVID. 404(b); *Zavala v. State*, No. 07-22-00280-CR, 2023 WL 6389410, at *3–4 (Tex. App.—Amarillo Sept. 29, 2023, pet. ref'd) (mem. op., not designated for publication) ("Article 38.37 carves an exception to the prohibition of use of extraneous offenses to show an actor's character and that he acted in conformity therewith as provided in Rules 404 and 405 of the Texas Rules of Evidence."); *Rivera v. State*, No. 08-19-00136-CR, 2021 WL 3129261, at *5 (Tex. App.—El Paso July 23, 2021, no pet.) (mem. op., not designated for

publication) ("By its express terms, [a]rticle 38.37 supersedes the application of [r]ule 404(b) and extraneous-offense evidence that would ordinarily be excluded is admissible."). Stated differently, if the statutory requirements of article 38.37 are met, then extraneous offense evidence that would ordinarily be inadmissible under rule 404(b) becomes admissible. *See Lara v. State*, 513 S.W.3d 135, 141 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

To meet the requirements of Texas Code of Criminal Procedure article 38.37, the trial court must determine whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the [extraneous] offense beyond a reasonable doubt." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. "Adequate" under article 38.37, section 2-a means legally sufficient. *See Romano v. State*, 612 S.W.3d 151, 159 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (internal quotations omitted). A complainant's testimony alone is sufficient to establish the offenses of aggravated sexual assault of a child, sexual assault of a child, or indecency with a child beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also Gutierrez*, 2021 WL 2931358, at *3.

During the trial court's article 38.37 hearing, P.Y. testified that appellant was listed on her birth certificate as her father, but he was not her biological father.

27

According to P.Y., appellant subjected P.Y. to sexual abuse "multiple times" during her childhood. Appellant first "started touching" P.Y. when she was three years old or four years old, while her family lived in a mobile home at the Over Street property. P.Y. recalled walking into a bedroom where appellant was "messing around" with the complainant, and appellant then asked P.Y. to "come and lay on the bed." Appellant told P.Y. to take her pants off, and appellant "started touching [her] on [her] vagina." Appellant penetrated P.Y.'s vagina with his fingers.

P.Y. also recalled that when she was eleven or twelve years old, appellant put his penis in her vagina. P.Y. estimated that appellant had vaginal intercourse with her about seven or eight times during her childhood. Further, on about three occasions, appellant had vaginal intercourse with P.Y. and the complainant at the same time. P.Y. noted that when appellant had vaginal intercourse with her, he would either ejaculate next to her on the bed or on her stomach.

P.Y. further testified that appellant begged her to perform oral sex on him, and during her childhood, appellant had her perform oral sex on him "[t]oo many" times to count. Appellant would ejaculate in her mouth when P.Y. would perform oral sex on appellant. Additionally, appellant engaged in anal intercourse with P.Y. on more than ten occasions; and according to P.Y., it hurt. The anal

intercourse by appellant occurred in appellant's bedroom at the Shady Creek Lane property and at the West Adoue Street property.

To get P.Y. to engage in sexual conduct with him, appellant would bribe her with soda and cigarettes. Appellant would make P.Y. engage in sexual conduct with appellant before he would give her anything. Appellant also told P.Y. not to tell anyone about what was happening, and if she did not tell anyone about the sexual abuse, then he would not sexually abuse P.Y.'s younger sisters.

At the article 38.37 hearing, P.Y.'s testimony about the extraneous offenses committed against her by appellant was clear and unequivocal. And it was adequate to support a finding that appellant had committed the offense of aggravated sexual assault of a child against P.Y. beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Deggs v. State*, 646 S.W.3d 916, 924–25 (Tex. App.—Waco 2022, pet. ref'd) (child complainant's testimony, standing alone without corroboration, was sufficient to prove offense for purposes of trial court's 38.37 finding); *see also Jackson v. State*, Nos. 05-22-01177-CR to 05-22-01179-CR, 2024 WL 1652463, at *8 (Tex. App.—Dallas Apr. 17, 2024, pet. filed) (mem. op., not designated for publication) ("The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault."). Further, we note that the admission of extraneous offense evidence under Texas Code of Criminal Procedure article 38.37 does not require a defendant to have been charged

with, tried for, or convicted of the extraneous offenses. *Castillo v. State*, 573 S.W.3d 869, 880–81 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see also Miller v. State*, Nos. 05-22-01309-CR to 05-22-01312-CR, 2024 WL 322265, at *3 (Tex. App.—Dallas Jan. 29, 2024, no pet.) (mem. op., not designated for publication); *Berg v. State*, No. 01-22-00248-CR, 2023 WL 5616200, at *12 (Tex. App.—Houston [1st Dist.] Aug. 31, 2023, pet. ref'd) (mem. op., not designated for publication); *Romano*, 612 S.W.3d at 159 (although jury did not indict defendant for extraneous offense, that did not render child victim's testimony inadequate under article 38.37).

During the trial court's other article 38.37 hearing, M.Y. testified that she was born in June 2006, and appellant was her biological father.

She recalled that one evening when she was about six years old and living at the Shady Creek Lane property, she got upset and threw a tantrum because her mother left the home and she wanted to go with her. M.Y.'s paternal grandmother "dragged [her] back into the house and sat [her] in the living room with" appellant. Appellant tried to calm M.Y. down and told her that they could go to his bedroom so that she could play on his cellular telephone. M.Y. and appellant went to the bedroom, and M.Y. played on his cellular telephone for a bit. Appellant then started making "weird gestures" and said, "Can you do this real quick?" Appellant had a towel "wrapped around his penis," and he told M.Y. "to put [her] mouth on

top of the towel" or "on top [of] . . . his penis." M.Y. was wearing a nightgown at the time, and appellant was only wearing the towel. M.Y. tried to put her mouth on appellant's penis, but "it didn't work" because her mouth was small. M.Y. recalled that appellant's penis was erect at the time.

M.Y. also testified that when she was eleven years old, she rode with appellant in his truck to a car wash in Alvin. M.Y. stated that she "love[d] car washes" and appellant invited her to come with him. While inside the car wash, appellant started asking M.Y. "inappropriate questions," such as "if [she] would ever have sex with him, if [she] would let him have sex with [her]." M.Y. did not know how to answer, but appellant "slid his hand into [her] pants and started messing with [her] vagina." And appellant penetrated her vagina with his finger.

Again, M.Y.'s testimony at the article 38.37 hearing about the extraneous offenses committed against her by appellant was clear and unequivocal. And it was adequate to support a finding that appellant had committed the offenses of attempted aggravated sexual assault of a child and aggravated sexual assault of a child against M.Y. beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Deggs*, 646 S.W.3d at 924–25; *see also Jackson*, 2024 WL 1652463, at *8 ("The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault."). The admission of extraneous offense evidence under Texas Code of Criminal Procedure article 38.37 does not require a defendant to

have been charged with, tried for, or convicted of the extraneous offenses. *Castillo*, 573 S.W.3d at 880–81; *see also Miller*, 2024 WL 322265, at \*3; *Berg*, 2023 WL 5616200, at \*12; *Romano*, 612 S.W.3d at 159 (although jury did not indict defendant for extraneous offense, that did not render child victim's testimony inadequate under article 38.37).

Based on the foregoing, we conclude that the trial court properly determined that the testimony of P.Y. and M.Y. about the extraneous offenses committed by appellant was adequate to support a finding by the jury that appellant committed the separate offenses beyond a reasonable doubt.[18] Thus, we hold that the trial court did not err in admitting the testimony of P.Y. and M.Y.[19]

---

[18] We note that even if extraneous offense evidence is admissible under Texas Code of Criminal Procedure article 38.37, a trial court has a nondiscretionary obligation to weigh the probative value of the evidence against any unfair prejudice of its admission if a defendant objects to the admission of extraneous offense evidence based on Texas Rule of Evidence 403. *Allen v. State*, 01-13-00784-CR, 2015 WL 5076288, at \*9 (Tex. App.—Houston [1st Dist.] Aug. 27, 2015, pet. ref'd) (mem. op., not designated for publication); *Martines v. State*, 371 S.W.3d 232, 246–47 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In a single sentence in his briefing, appellant asserts that the "trial court did not act within the zone of reasonable disagreement when it determined that the probative value of the extraneous offense evidence was not substantially outweighed by its prejudicial effect." To assert an issue on appeal, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if he does not adequately brief that issue by not providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *See id.*; *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *Chaves v. State*, 630 S.W.3d 541, 555, 557–58 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Thus, to the extent that appellant seeks to argue on appeal that the trial court

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Do not publish.  TEX. R. APP. P. 47.2(b).

---

erred in admitting the testimony of P.Y. and M.Y. because the prejudicial effect of the extraneous offense evidence outweighed its probative value, we hold that he has waived that argument due to inadequate briefing. *See, e.g.*, *Lewis v. State*, No. AP-77,045, 2017 WL 1493489, at *20 (Tex. Crim. App. Apr. 26, 2017) (not designated for publication) (defendant waived Texas Rule of Evidence 403 complaint about extraneous offense evidence due to inadequate briefing).

[19] Due to our disposition, we need not address appellant's remaining argument that he was harmed by the admission of the testimony of P.Y. and M.Y.  *See* TEX. R. APP. P. 47.1.